

# Fourth Court of Appeals
## San Antonio, Texas

## MEMORANDUM OPINION

No. 04-20-00305-CV

**IN THE INTEREST OF A.K.P.**, a Child

From the 57th Judicial District Court, Bexar County, Texas
Trial Court No. 2019PA01650
Honorable Charles E. Montemayor, Judge Presiding

Opinion by:     Patricia O. Alvarez, Justice

Sitting:        Patricia O. Alvarez, Justice
                Irene Rios, Justice
                Beth Watkins, Justice

Delivered and Filed: February 3, 2021

AFFIRMED

Mom appeals the trial court's order terminating her parental rights to her child, A.K.P.[i] Mom asserts the evidence was legally and factually insufficient to support the trial court's best-interest-of-the-child finding.  We affirm the trial court's order.

## BACKGROUND

At birth, A.K.P. tested positive for amphetamines.  He experienced withdrawals and was prescribed morphine.  A.K.P. and Mom were referred to the Department of Family and Protective Services.  Their caseworker talked to Mom at the Neonatal Abstinence Syndrome Center where Mom was being treated for her drug use.  Mom told the caseworker she had previously given birth to drug-addicted infants, but she learned from her mistakes and wanted to stop using drugs.  Mom

---

[i] To protect the minor's identity, we use aliases for Appellant and the child.  *See* TEX. R. APP. P. 9.8.

admitted she preferred to use heroin and had been using it for at least ten years. She said she used marijuana, cocaine, and amphetamines to avoid abusing heroin.

The caseworker helped Mom to start services and placed her at Casa Mia, a recovery home for women and children. But on or about August 14, 2019, Mom fell asleep on top of four-month-old A.K.P. while she was under the influence of drugs. This incident led the caseworker to report Mom as an imminent danger to A.K.P., and A.K.P. was removed from Mom's custody. The Department filed a petition for conservatorship and termination on August 15, 2019. Mom also checked herself out of Casa Mia against advice, and she was therefore removed from their program.

Another caseworker created a service plan for Mom and warned her that she risked losing her parental rights if she failed to follow through. The plan focused on substance abuse treatment, individual counseling, and parenting. Mom signed the plan and agreed that she understood, but addiction made accountability very difficult for Mom, and she did not complete the service plan.

Mom stopped visiting A.K.P. After A.K.P.'s removal, Mom was granted weekly supervised visits. Over the course of approximately six weeks, Mom missed about four or five visits. When COVID-19 became widespread and caused visitation to be limited to virtual visits, Mom stopped attending altogether. Mom told her caseworker that it was difficult to secure regular Internet access because she was homeless.

Mom also failed to attend trial on May 19, 2020, which was held virtually. Mom's attorney asked for a continuance and explained that Internet access remained difficult for Mom. Her attorney stated that she was not in contact with Mom. The Department objected to a continuance, pointing out that Mom had not been actively engaged in her own case for a month and she tested positive for drugs before that. The trial court agreed that Mom's history, including her

disengagement from A.K.P., did not lend itself to a finding of extraordinary circumstances that would warrant a continuance. The court denied the continuance request and commenced trial.

During trial, the court heard testimony that Mom told caseworkers she aspired to overcome her drug addiction and change her life, but that she did not manage it. The court heard that A.K.P. was placed with a foster family who was willing to adopt him and that A.K.P. was thriving. After hearing the evidence, the trial court found by clear and convincing evidence that Mom's course of conduct met Family Code section 161.001(b)(1)'s grounds (N), (O), (P), and (R), and terminating Mom's parental rights was in the child's best interest. Mom appeals.

## EVIDENCE REQUIRED, STANDARDS OF REVIEW

The evidentiary standards[1] the Department must meet and the statutory grounds[2] the trial court must find to terminate a parent's rights to a child are well known, as are the legal[3] and factual[4] sufficiency standards of review. We apply them here.

## BASES FOR TERMINATING MOM'S PARENTAL RIGHTS

### A. Mom's Course of Parental Conduct

Mom does not challenge the trial court's findings that Mom's course of conduct met statutory grounds (N), (O), (P), and (R). *See* TEX. FAM. CODE ANN. § 161.001(b)(1)(N), (O), (P), (R).

### B. Best Interest of the Child

Mom challenges the sufficiency of the evidence for the trial court's finding that terminating her parental rights is in her child's best interest. *See id.* § 161.001(b)(2). The Family Code statutory factors[5] and the *Holley* factors[6] for best interest of the child are well known. Applying each standard of review and the applicable statutory and common law factors, we examine the evidence pertaining to the best interest of the child.

**C.     Witnesses at Trial**

At the bench trial, the trial court heard testimony from Department caseworkers, Isabel Romero and Patrick Montiano.  The trial court also heard from the child's attorney ad litem.  The trial court was the "sole judge[] of the credibility of the witnesses and the weight to give their testimony."  *See City of Keller v. Wilson*, 168 S.W.3d 802, 819 (Tex. 2005); *cf. In re H.R.M.*, 209 S.W.3d 105, 108 (Tex. 2006) (per curiam).  The trial court heard the following testimony.

**D.     Evidence of Best Interests of the Child**

A.K.P. was born addicted to amphetamines.  A.K.P. was the sixth of Mom's children to be born with a positive indication for the presence of drugs.  Mom could not manage to overcome her drug addiction, and A.K.P. was placed into foster care where he thrived.  *See* Tex. Fam. Code Ann. § 263.307(b)(1), (7), (8), (10), (11), (12); *Holley v. Adams*, 544 S.W.2d 367, 372 (Tex. 1976) (factors (B), (C), (D), (H)).

**E.     Mom's Plan Compliance**

At the beginning of her service plan, Mom completed her psychological evaluation and began services related to substance abuse treatment, individual counseling, and parenting.  But after March 2020, Mom was not engaged with services at all.  Mom's caseworker worked to motivate her, but although Mom expressed the desire to end her drug addiction and be present for A.K.P., she did not follow through with the Department's service plan and she did not continue to visit with A.K.P. after he was removed.  Mom expressed to her caseworker that she had difficulty with the technical demands of visitation after COVID-19 became widespread, but there was no area in which she showed any ability to ultimately follow through with the Department's requirements for reunification, and she did not maintain communication with her caseworker.  *See* Tex. Fam. Code Ann. § 263.307(b)(8), (10), (11), (12); *Holley*, 544 S.W.2d at 372 (factors (B), (C), (D), (G), (H)).

**F.**     **Mom's Care for her Child**

The Department became involved in A.K.P.'s case when he was born addicted to amphetamines. Mom underwent treatment at the Neonatal Abstinence Syndrome Center and was later placed at the Casa Mia recovery home. But she showed her inability to safely care for A.K.P. when she took drugs and fell asleep on top of him. When a Casa Mia worker discovered A.K.P., he was red and sweaty, and Mom was showing signs of intoxication that rendered her unable to safely hold him. *See* TEX. FAM. CODE ANN. § 263.307(b)(1), (6), (8), (11), (12); *Holley*, 544 S.W.2d at 372 (factors (B), (C), (D), (H), (I)).

**G.**     **Options, Recommendations**

A.K.P. was placed with a foster family who is willing to adopt him. *See* TEX. FAM. CODE ANN. § 263.307(b)(1), (2); *Holley*, 544 S.W.2d at 372 (factors (B), (C), (D), (G), (H)).

The Department case worker and the child's ad litem opined that it would be in the child's best interest for Mom's parental rights to be terminated.

Considering all the evidence under the two evidentiary standards, we conclude the trial court could have formed a firm belief or conviction that terminating Mom's parental rights to her child was in the child's best interest. *See* TEX. FAM. CODE ANN. § 161.001(b)(2); *In re E.N.C.*, 384 S.W.3d 796, 807 (Tex. 2012).

## CONCLUSION

Because the evidence was legally and factually sufficient to support the trial court's findings by clear and convincing evidence (1) of at least one predicate ground for termination and (2) that termination of Mom's parental rights is in the best interest of her child, we affirm the trial court's order.

Patricia O. Alvarez, Justice

<hr>

[1] Clear and Convincing Evidence. If the Department moves to terminate a parent's rights to a child, the Department must prove by clear and convincing evidence that the parent's acts or omissions met one or more of the grounds for involuntary termination listed in section 161.001(b)(1) of the Family Code, and terminating the parent's rights is in the best interest of the child. TEX. FAM. CODE ANN. § 161.001(b); *In re J.F.C.*, 96 S.W.3d 256, 261 (Tex. 2002). The same evidence used to prove the parent's acts or omissions under section 161.001(b)(1) may be used in determining the best interest of the child under section 161.001(b)(2). *In re C.H.*, 89 S.W.3d 17, 28 (Tex. 2002); *In re D.M.*, 452 S.W.3d 462, 471 (Tex. App.—San Antonio 2014, no pet.); *see also* TEX. FAM. CODE ANN. § 161.001(b). The trial court may consider a parent's past deliberate conduct to infer future conduct in a similar situation. *In re D.M.*, 452 S.W.3d at 472.

[2] Statutory Grounds for Termination. The Family Code authorizes a court to terminate the parent-child relationship if, inter alia, it finds by clear and convincing evidence that the parent's acts or omissions met certain criteria. *See* TEX. FAM. CODE ANN. § 161.001(b). Here, the trial court found Appellant's course of conduct met the following criteria or grounds:

    (N) constructively abandoned the child who has been in the permanent or temporary managing conservatorship of the Department of Family and Protective Services for not less than six months, and:
    (i) the department has made reasonable efforts to return the child to the parent;
    (ii) the parent has not regularly visited or maintained significant contact with the child; and
    (iii) the parent has demonstrated an inability to provide the child with a safe environment;

    (O) failed to comply with the provisions of a court order that specifically established the actions necessary for the parent to obtain the return of the child who has been in the permanent or temporary managing conservatorship of the Department of Family and Protective Services for not less than nine months as a result of the child's removal from the parent under Chapter 262 for the abuse or neglect of the child;

    (P) used a controlled substance, as defined by Chapter 481, Health and Safety Code, in a manner that endangered the health or safety of the child, and:
    (i)    failed to complete a court-ordered substance abuse treatment program; or
    (ii)   after completion of a court-ordered substance abuse treatment program, continued to abuse a controlled substance; [and]

    (R) been the cause of the child being born addicted to alcohol or a controlled substance, other than a controlled substance legally obtained by prescription.

*Id.* § 161.001(b)(1).

[3] Legal Sufficiency. When a clear and convincing evidence standard applies, a legal sufficiency review requires a court to "'look at all the evidence in the light most favorable to the finding to determine whether a reasonable trier of fact could have formed a firm belief or conviction that its finding was true.'" *In re J.L.*, 163 S.W.3d 79, 85 (Tex. 2005) (quoting *In re J.F.C.*, 96 S.W.3d at 266). If the court "'determines that [a] reasonable factfinder could form a firm belief or conviction that the matter that must be proven is true,'" the evidence is legally sufficient. *See id.* (quoting *In re J.F.C.*, 96 S.W.3d at 266).

[4] Factual Sufficiency. Under a clear and convincing standard, evidence is factually sufficient if "a factfinder could reasonably form a firm belief or conviction about the truth of the State's allegations." *In re C.H.*, 89 S.W.3d at 25; *accord In re H.R.M.*, 209 S.W.3d 105, 108 (Tex. 2006). We must consider "whether disputed evidence is such that a reasonable factfinder could not have resolved that disputed evidence in favor of its finding." *In re J.F.C.*, 96 S.W.3d at 266; *accord In re H.R.M.*, 209 S.W.3d at 108.

[5] Statutory Factors for Best Interest of the Child. The Texas legislature codified certain factors courts are to use in determining the best interest of a child:
    (1)    the child's age and physical and mental vulnerabilities;
    (2)    the frequency and nature of out-of-home placements;
    (3)    the magnitude, frequency, and circumstances of the harm to the child;
    (4)    whether the child has been the victim of repeated harm after the initial report and intervention by the department;
    (5)    whether the child is fearful of living in or returning to the child's home;

(6) the results of psychiatric, psychological, or developmental evaluations of the child, the child's parents, other family members, or others who have access to the child's home;

(7) whether there is a history of abusive or assaultive conduct by the child's family or others who have access to the child's home;

(8) whether there is a history of substance abuse by the child's family or others who have access to the child's home;

(9) whether the perpetrator of the harm to the child is identified;

(10) the willingness and ability of the child's family to seek out, accept, and complete counseling services and to cooperate with and facilitate an appropriate agency's close supervision;

(11) the willingness and ability of the child's family to effect positive environmental and personal changes within a reasonable period of time;

(12) whether the child's family demonstrates adequate parenting skills; . . . and

(13) whether an adequate social support system consisting of an extended family and friends is available to the child.

TEX. FAM. CODE ANN. § 263.307(b); *see In re A.C.*, 560 S.W.3d 624, 631 (Tex. 2018) (recognizing statutory factors).

[6] *Holley* Factors. The Supreme Court of Texas identified the following factors to determine the best interest of a child in its landmark case *Holley v. Adams*:

(A) the desires of the child;

(B) the emotional and physical needs of the child now and in the future;

(C) the emotional and physical danger to the child now and in the future;

(D) the parental abilities of the individuals seeking custody;

(E) the programs available to assist these individuals to promote the best interest of the child;

(F) the plans for the child by these individuals or by the agency seeking custody;

(G) the stability of the home or proposed placement;

(H) the acts or omissions of the parent which may indicate that the existing parent-child relationship is not a proper one; and

(I) any excuse for the acts or omissions of the parent.

*Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976) (footnotes omitted); *accord In re E.N.C.*, 384 S.W.3d 796, 807 (Tex. 2012) (reciting the *Holley* factors).